**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**December 11, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 03-10157

WESTERN OIL & GAS JV, INC.,

Plaintiff-Appellant,

versus

JOHN L. GRIFFITHS, JR., an Individual; ET AL.,

Defendants,

CASTLEROCK OIL COMPANY, INC., a Texas
Corporation; DAVID C. TYRRELL, JR., also
known as David C. Tyrell, Jr., an Individual;
TURTLE CREEK RESOURCES, INC., a
Louisiana Corporation; ASM EXPLORATION, INC.,
a Louisiana Corporation.

Defendants-Appellees.

Appeal from the United States District Court for
the Northern District of Texas
(USDC No. 3:00-CV-2770-N)

Before REAVLEY, HIGGINBOTHAM and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

The judgment of the district court is affirmed for the following reasons:

1. Appellees demonstrated that Griffiths did not actually own any valid unexpired leasehold interests that were transferred to the Tyrrell Defendants (Tyrrell) or Castlerock during the relevant period. A person cannot fraudulently transfer an asset that he does not own. To the extent Western claims that Tyrrell transferred a back-end interest in the Shinn well to Griffiths, such a transfer will not by itself support a fraudulent transfer claim, which is premised on a transfer of property owned by the judgment debtor, Griffiths, to a third party, not the other way around. If Griffiths received assets from appellees, Western's remedy is to execute on its judgment against Griffiths and seize the assets from him. Insofar as Western argues that Griffiths received an interest in the Shinn well and then transferred this interest to Tyrrell Defendant ASM, the record does not support this argument. Western cites a chart listing ASM as a working interest owner in the well, but this chart is entirely consistent with the evidence submitted by Tyrrell that Griffiths had no interest to convey to ASM or any other party.

2. The turnover order is not a proper vehicle for determining what rights, if any, Griffiths had in the Shinn well. This is a substantive disputed legal matter that was not litigated in the turnover proceeding. The Tyrrell Defendants were not parties to the

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

underlying litigation, and the turnover order was an agreed order where no legal or factual issues were actually litigated. In <u>RTC v. Smith</u>, 53 F.3d 72 (5th Cir. 1999), we explained:

> A proceeding to determine whether a transaction is fraudulent or otherwise to determine property rights of the parties is improper under the turnover statute, for the statute does not allow for a determination of the substantive rights of involved parties. It is even more clear that a party not even before the court cannot have its rights determined via a turnover proceeding.

<u>Id.</u> at 80 (citations and internal quotation marks omitted).

3. Western claims that Griffiths earned consulting fees from Castlerock but arranged with Castlerock to be designated an employee to avoid the turnover order. Under the Texas turnover statute, wages for personal services are exempt from turnover orders, TEX. CIV. PRAC. & REM. CODE § 31.0025 (Vernon 1997), and there is some Texas authority distinguishing between fees paid to an independent contractor, which are not exempt from turnover orders, and wages paid to an employee, which are exempt. <u>See</u> <u>DeVore v. Cent. Bank & Trust</u>, 908 S.W.2d 605, 610 (Tex. App.–Fort Worth 1995, no writ). Castlerock offered deposition testimony supporting its position that the payments were wages, including testimony from its president that Griffiths became an employee when "the scope of the operation had grown to a point where it needed a full-time engineer." Whether the fees paid to Griffiths were wages or consulting fees is a substantive disputed legal matter that is not properly decided via a turnover proceeding, or in this case an agreed turnover order to which Castlerock was not even a party. Castlerock had no opportunity to litigate this issue in the underlying suit and is not even

3

named in the turnover order. "The turnover procedure contemplates the presence of third parties where their interest may be involved." Roebuck v. Horn, 74 S.W.3d 160, 164 (Tex. App.–Beaumont 2002, no pet.).

4. The claim that Tyrrell and Castlerock were alter egos of Griffiths and/or Griffiths' company Lloyds is not supported by any evidence. Western offered evidence that for a period Mr. Tyrrell shared offices and certain office equipment and expenses with Griffiths or one of his companies. Similar evidence was offered as to Griffiths and Castlerock. This evidence is insufficient to pierce the corporate veil. The summary judgment record indicates that Griffiths was a business associate of some sort with both Tyrrell and Castlerock, and was involved in oil and gas related business ventures with both. Castlerock offered evidence that Griffiths was a consultant and later an employee of Castlerock. The fact that he worked in the same offices with appellees and shared expenses and equipment is insufficient grounds for piercing the corporate veil.

5. Western also claims that the Tyrrell Defendants and Castlerock are liable under a single business enterprise theory. This doctrine provides that "when corporations are not operated as separate entities, but integrate their resources to achieve a common business purpose, each constituent corporation may be held liable for the debts incurred in pursuit of that business purpose." Gardemal v. Westin Hotel Co., 186 F.3d 588, 94 (5th Cir. 1999). Like the alter-ego doctrine, the single business enterprise doctrine is an equitable remedy which applies when the corporate form is "used as part of an unfair device to achieve an inequitable result." Old Republic Ins. Co. v. EX-IM Servs. Corp.,

4

920 S.W.2d 393, 395 (Tex. App.–Houston[1st Dist.] 1996, no writ).  This doctrine is no more viable for Western than the alter ego doctrine.  Like alter ego, the single business enterprise doctrine is an equitable remedy and not a cause of action.  Gardemal, 186 F.3d at 94.  Absent a cognizable cause of action this remedy is unavailable.

6.  Western argues that it has a valid unjust enrichment claim because "Griffiths fraudulently transferred his oil and gas interests to [appellees] instead of holding those assets in his own name, where Western could reach these assets to satisfy its judgments from the Earlier Lawsuit."  Western also asserted a civil conspiracy claim against the Tyrrell and Castlerock, and claims that fraudulent transfer was the underlying unlawful act.  These claims fail because the evidence does not support a fraudulent transfer claim.

AFFIRMED.